UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH DAVIDSON and JANA DAVIDSON, INDIVIDUALLY and On Behalf of Their Minor Children JCD and KSD, and THOMAS FARMER, <br><br> Plaintiffs, <br><br> v. <br><br> ROCKWELL INTERNATIONAL CORPORATION, et al <br><br> Defendants. | 1:14 CV 03886 <br><br><br> JUDGE LORNA G. SCHOFIELD <br><br><br><br><br> **PLAINTIFFS' SECOND SET OF INTERROGATORIES DIRECTED TO DEFENDANT, FAIRCHILD CONTROLS CORPORATION** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO:  **FAIRCHILD CONTROLS CORPORATION**
*through its attorneys of record*
**Thad Dameris
Hannah Sibiski
Christopher O'Dell
Benjamin Wolinsky
ARNOLD & PORTER, L.L.P.
700 Louisiana Street, Suite 1600
Houston, Texas 77002**

Pursuant to the Court's Docket Control Order of May 1, 2015, Federal Rule of Civil Procedure 33, and Local Rule 33.1, Plaintiffs, Kenneth Davidson and Jana Davidson, Individually and On Behalf of Their Minor Children JCD and KSD, and Thomas Farmer, propound the following Second Set of Interrogatories ("Interrogatories") to Fairchild Controls Corporation ("Fairchild") to be answered fully, in writing, under oath and in accordance with the Federal Rules of Civil procedure and the Local Civil Rules, supplemented as permitted by the specific definitions and instructions below.

These Interrogatories are to be deemed continuing. If, after answering the following Interrogatories, Defendant acquires any additional knowledge, information, or responsive documents, Defendant shall supplement his answers to the Interrogatories no later than thirty (30) days after acquiring the additional knowledge, information, or documents. In the event that Defendant acquires additional knowledge, information, or documents responsive to these Interrogatories less than thirty

1

(30) days prior to trial, Defendant shall supplement his answers to these Interrogatories immediately.

In answering these Interrogatories, all words should be given their common meaning, with the exception of the following defined terms:

(a) "Occurrence," unless otherwise indicated, means the accident or other event complained of in the pleadings which occurred on May 31, 2011.

(b) "Product at Issue" means the Air Cycle Machine ("ACM") manufactured by Fairchild alleged in the pleadings to have been defective and involved in the occurrence and which was installed aboard the Twin Commander 690A aircraft involved in this litigation.

(c) "Product" means any and all ACM's manufactured by Fairchild which possessed the same technical specifications as the Product at Issue as originally manufactured.

(d) "Component(s)" means any part or individually-identifiable piece.

(e) "Product information" means an instruction or warning as to use or risks of a product.

(f) "Change(s) in condition" means any work performed on the Product at Issue whether in the nature of a repair, overhaul, modification, manufacturing, re-manufacturing, overlay, re-design or otherwise and despite how it is characterized by you in the relevant documentation.

**INTERROGATORY NO. 1:**

Please provide a timeline of Fairchild's involvement with the product at issue, including its original manufacture date, original sale date, subsequent sale dates, repairs, overhauls, sales orders, service, testing, warranty returns, field returns, customer support interactions, and receiving and shipping dates. Please include customer identification for each entry.

**INTERROGATORY NO. 2:**

Please identify any changes to the original design of the product, including any Change Notices, Parts Manufacturer Approval ("PMA") Supplements, and Supplemental Type Certificates.

**INTERROGATORY NO. 3:**

Please state whether the product at issue underwent any repair or change in its condition between the time it left Fairchild's's control following its original manufacture and sale and the time it was returned to Fairchild for overhaul in January 2005, and, if so, describe each change in condition including an identification of any and all persons involved in the change in condition and

the role that individual played.

**INTERROGATORY NO. 4:**

Please state whether the product at issue underwent any repair or change in its condition between the time it left Fairchild's control in 2007 and the time of the occurrence and, if so, describe each change in condition including an identification of any and all persons involved in the change in condition and the role that individual played.

**INTERROGATORY NO. 5:**

State whether the product at issue underwent any change in its condition between the time of the occurrence and the present and, if so, describe each change in condition, including an identification of any and all persons involved in the change in condition and the role that individual played.

**INTERROGATORY NO. 6:**

If you intend to use at trial a simulation (computer or actual), experiment, test, or analysis, describe each simulation, experiment, test, or analysis, identify the person who created or performed it or who intends to perform it, and identify each document that refers to it.

**INTERROGATORY NO. 7:**

Identify and describe each study, experiment, test, report, or analysis, performed by you or on your behalf, that mentions any adverse effects of the use of the product [or any substantially similar product].

**INTERROGATORY NO. 8:**

State whether any product information concerning the release of toxic fumes was changed in any way with respect to the product [or any substantially similar product] from the time you first manufactured this product until present.

**INTERROGATORY NO. 9:**

If you or anyone on your behalf provided to Global Aviation Services, Northorup Grummann, the plaintiffs, or their employer any technical literature, product brochure, or promotional literature concerning The Product at any time before the occurrence:

(a) identify the literature or brochure;

(b) identify the person who provided the literature or brochure to the plaintiff; and

(c) state the date the literature or brochure was given to the plaintiff.

**INTERROGATORY NO. 10:**

If you are aware of any lawsuit or other claim based upon an allegation that a defect in a component substantially similar to the component(s) at issue was a cause of any personal injury, death, or property damage, as to each:

(a) state the date you became aware of the lawsuit or claim;

3

(b) state the date and location of the incident involved in the lawsuit or claim and describe the [product(s)] and [component(s)] involved and the nature of the defect alleged;

(c) identify the person bringing the lawsuit or claim; and

(d) if a lawsuit, identify the court, case caption, and docket number.

**INTERROGATORY NO. 11:**

If there has been any federal or state governmental or industry investigation of the safety of The Product or [any substantially similar product or] the component(s) at issue [or any component substantially similar to the component(s) at issue]:

(a) state the date of the investigation;

(b) identify the governmental or industry entity that conducted the investigation;

(c) describe the nature and subject matter of the investigation;

(d) identify each person who responded on your behalf to the investigation; and,

(e) identify each document that refers to the investigation.

**INTERROGATORY NO. 12:**

If you or any agent or employee of yours expressly warranted or guaranteed The Product, state the exact words of each warranty or guarantee, and when, where, and by what means the warranty or guarantee was given.

**INTERROGATORY NO. 13:**

If you contend that you or any agent or employee of yours disclaimed any warranty or guarantee of The Product, state the exact words of each disclaimer, whether you contend that the person harmed by The Product was or should have been aware of the disclaimer, and when, where, and by what means the disclaimer was made.

**INTERROGATORY NO. 14:**

Explain the meaning of each code word, code number, or other symbol appearing on the product at issue, including any that identifies the place of manufacture, the date of manufacture, the lot or batch of which the product at issue was a part, or any test or examination of the product at issue. In your answer please specifically explain, but do not limit your answer to, the information depicted in documents FAIRCHILD_000084 - FAIRCHILD_000088.

**INTERROGATORY NO. 15:**

Identify all persons who (a) were directly responsible for the design, testing, certification, or safety of the product at issue or its component(s) and (b) are most knowledgeable about the design, testing, certification, or safety of same. As to each person, state the area of that person's responsibility or knowledge.

**INTERROGATORY NO. 16:**

Please describe any knowledge or information you possessed regarding the entrance of fluid or gases (including unwanted tramp fluids) into the cabins of aircraft within which the product was installed prior to the occurrence.

**INTERROGATORY NO. 17:**

In the course of designing and manufacturing the product (whether relating to when the product was originally designed and manufactured or to any subsequent material change, overhaul, re-manufacturing, or otherwise as identified in Interrogatory Nos. 1-5) please fully describe any and all testing procedures performed on the product and any anomalies, leaks, irregularities, or product failures which were discovered.

**INTERROGATORY NO. 18:**

Did any of the information learned in the course of any testing described above reveal that fluid or gasses (unwanted or tramp fluids), other than intended conditioned air can enter the cabin air system through the ACM? If yes, please describe these findings and the process by which air other than conditioned air, could be fed into the cabin of an aircraft through the product, and identify the origination sources for the aforementioned fluid or gasses.

**INTERROGATORY NO. 19:**

Please describe your involvement with the complete environmental assessment discussion and data exchanged with Mr. Parker and Joe Jurinsky which is referenced in the Deposition of John Probst dated 9/5/2012 at page 232.

**INTERROGATORY NO. 20:**

Describe completely and specifically what is contained in the "installation kit" or "kit" identified as Part Number 500125 on the packing slips dated 2/13/2007 and 6/8/2012 from Fairchild to Global Aviation Services, Inc. [Packing slips numbered FAIRCHILD_00002-0003 AND FAIRCHILD_0008-0009]

**INTERROGATORY NO. 21:**

Please describe any and all communication between Fairchild and all previous owners of the Twin Commander 690A aircraft that is the subject of this lawsuit concerning ventilation, pressurization, cooling, heating, fumes, smoke, or vapors in the aircraft, including, without limitation, Surdex Corporation, its employees, mechanics, pilots, or other representatives.

**INTERROGATORY NO. 22:**

Please identify the specific provision(s) of each governmental or industry regulation, standard, guideline, recommendation, accepted practice, or custom that you contend was applicable to the design, manufacture, performance, testing, certification, or safety of the product at issue at the time product at issue left Fairchild's control.

RESPECTFULLY SUBMITTED,

By: /s/ Michael C. Palmintier
Michael C. Palmintier (La. Bar. Roll No. 10288)
Jonathan E. Mitchell (La. Bar. Roll No. 33284)
DEGRAVELLES, PALMINTIER, HOLTHAUS &FRUGE, L.L.P.
618 Main Street
Baton Rouge, Louisiana 70801
Mpalmintier@dphf-law.com
Jmitchell@dphf-law.com
Ph. (225)344-3735
Fx. (225)344-0522
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have this day electronically filed the foregoing document with the Clerk of the United States District Court, Southern District of Texas, Houston Division, using the electronic case filing system of the Court through which all parties have consented to be served.

THIS, the 23rd day of March, A.D., 2016.

/s/ Michael C. Palmintier
MICHAEL C. PALMINTIER